UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
Ralph Rodriguez,

                Plaintiff,

       -against-

City of New York et al,

                Defendants.

------------------------------------------------------------ x

15-CV-07945

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

    Plaintiff Ralph Rodriguez brings this action pursuant to 42 U.S.C. § 1983 against Defendants City of New York and various employees of the New York City Department of Correction ("DOC"), alleging that while in DOC's custody as a pretrial detainee between January 2015 and June 2015 he was subjected to a host of conditions and actions that violated his rights under the United States Constitution. In addition to his unconstitutional conditions of confinement and procedural due process claims, Plaintiff also asserts a violation of his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 *et seq.*, for failure to make reasonable accommodations and a state law negligence claim against the City of New York for an alleged trip-and-fall. Defendants have now moved to dismiss the complaint in its entirety under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the reasons stated below, Defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

    The following facts are taken from Plaintiff's Second Amended Complaint ("SAC") and are presumed to be true for the purposes of this motion to dismiss. *See USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia*, 681 F.3d 103, 105 n.4 (2d Cir. 2012).

1

Prior to his arrest, Plaintiff was stabbed multiple times and experienced serious injuries to his abdomen, right and left arms, and his right wrist. *Id.* ¶¶ 32-33. The stabbing caused extensive nerve, artery, and tendon damage and required surgical removal of muscle and tissue, and as a result, he suffers from ongoing pain, numbness, tingling, weakness, and severely limited mobility in his right arm and hand. *Id.* ¶ 33. Plaintiff also suffers from diagnosed chronic lower back pain caused by an injury to the lumbar region of his spine, chronic pain in his neck and legs, and flat feet. *Id.* ¶ 34. In addition to his physical disabilities, he has been diagnosed with bipolar and antisocial personality disorder, anxiety, claustrophobia, and depression. *Id.* ¶ 35. On January 10, 2015, Plaintiff was arrested and taken into the custody of Defendant New York City and DOC at Anna M. Kross Center ("AMKC") on Rikers Island. *Id.* ¶ 18. Defendants were provided notice of Plaintiff's medical conditions and needs through his medical records. *Id.* ¶¶ 37, 61.

Upon arrival at Rikers Island on January 10, 2015, Plaintiff was detained in unsanitary, insect-infested, and overcrowded cells for three days. *Id.* ¶¶ 39-40. Plaintiff was frequently moved from one overcrowded "bullpen" to another, in what was allegedly a deliberate tactic to "destabilize detainees' mental states and cause them confusion, discomfort, disorientation, and anxiety." *Id.* ¶ 46. Detainees in these cells were provided unsanitary food and water, non-working sinks or toilets (resulting in cells soiled with urine and feces), and insufficient number of beds and places to sit. *Id.* ¶¶ 40-41, 44. Due to these conditions, Plaintiff "suffered severe inflammation, itching, and pain in his feet," resulting in one of his toenails being surgically removed. *Id.* ¶¶ 49-50.

On January 13, 2015, Plaintiff was placed in a cell for two months. *Id.* ¶ 55. Due to his claustrophobia and the close quarters, Plaintiff filed multiple grievances and made multiple

requests to be placed in a dormitory rather than a cell, but was not moved to a dormitory until March 2015. *Id.* ¶¶ 56-57. That same day, Plaintiff was provided a bed with a single mattress. *Id.* ¶ 59. Plaintiff requested that Defendants provide him with a second mattress or a replacement mattress because the single mattress exacerbated his chronic back, arm, leg, and neck pain. *Id.* ¶¶ 59-60, 62. Plaintiff never received an additional or replacement mattress, which exacerbated his prior injuries and disability. *Id.* ¶¶ 65-66.

On January 30, 2015, Plaintiff started experiencing extreme tooth pain and requested immediate treatment. *Id.* ¶ 68. Despite Plaintiff's repeated requests for dental care, Defendants John Does refused his requests for more than five weeks, granting access to a dentist on March 7, 2015. *Id.* ¶¶ 69, 74. Plaintiff attributes the delay in dental care to the City and DOC's *de facto* policy of allowing medical treatment only on certain days. *Id.* ¶¶ 72-73. During the dental appointment, the dentist diagnosed Plaintiff with a tooth infection and informed him that, because of the inordinate delay, his tooth could not be salvaged and would have to be removed. *Id.* ¶¶ 75–76. Three weeks after his diagnosis, Plaintiff underwent oral surgery to remove the tooth on March 28. *Id.* ¶ 78. During this period of time, Plaintiff suffered from tooth pain.

On May 15, 2015, Plaintiff asked Defendant Officer Chambers for disinfectant spray to clean his bed. *Id.* ¶ 81. Officer Chambers provided Plaintiff with a stain remover that Officer Chambers knew presented "risks of severe . . . skin irritation upon exposure." *Id.* ¶¶ 82–84. After Plaintiff used the stain remover on his bed, he developed rashes all over his back. *Id.* ¶¶ 85-6. He requested medical treatment, but Officer Chambers and Defendants John Does told Plaintiff to wait for sick call. *Id.* ¶¶ 87-92. Due to the City's and DOC's *de facto* policy of providing medical treatment on certain days, Plaintiff received medical treatment for the rashes four days later. *Id.* ¶ 91.

On or about May 28, 2015, Plaintiff was walking near his housing unit when he tripped on a crack in the floor and fell to the ground. *Id.* ¶ 125. The City and DOC were aware of the crack but had made no attempt to repair it. *Id.* ¶ 126. Defendant Officer Gant did not warn Plaintiff about the crack or provide any assistance to him after seeing him fall. *Id.* ¶¶ 128-29. Defendant Captain Cain completed a report of the incident, but the report was inaccurate due to omissions of key facts. *Id.* ¶ 132. The fall caused Plaintiff serious injuries to his neck, back, knees, and right ankle, including a torn ligament, and Plaintiff now walks with a limp and uses a medically prescribed cane. *Id.* ¶¶ 133–35.

Lastly, on February 10, 2015, a doctor in Correctional Health Services prescribed Plaintiff an arm brace to prevent "worsening" of the pain, numbness, tingling, and weakness in his right arm and hand resulting from his existing disability. *Id.* ¶ 95. The prescription provided for Plaintiff's use of the brace "during the time of his detention." *Id.* ¶ 103. On June 4, 2015, Defendants Officer Griffin, Captain Plaskett, Officers John Does performed a search of Plaintiff's bed and designated housing area to "look for any weapons or contraband." *Id.* ¶¶ 98-99. Defendant Officer Griffin inspected Plaintiff's medical brace, and Plaintiff showed the documentation of his prescription to Officer Griffin. *Id.* ¶¶ 100-01. Officer Griffin "falsely informed" Plaintiff that the documentation was "no good" and kicked the brace into a pile of trash. *Id.* ¶ 102. Plaintiff again explained he had been prescribed the brace and asked for it back, but Officer Griffin refused. *Id.* ¶ 103. Plaintiff then showed his prescription to Defendant Plaskett, who ignored Plaintiff and told Plaintiff that he could get another brace. *Id.* ¶¶ 109-110. Despite Plaintiff's pleadings, Officer Griffin tore up the documentation. *Id.* ¶ 112. During a previous housing search, Plaintiff observed Officer Griffin physically abusing detainees and then objected to his behavior. *Id.* ¶ 115. Officer Griffin admitted that the confiscation of the brace

4

was retaliation for Plaintiff's prior objection. *Id.* ¶ 116. Defendants never returned Plaintiff's brace or provided him a replacement, and Plaintiff's lack of the brace has caused him ongoing pain and discomfort. *Id.* ¶ 118.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a claim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Thus, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). For the purposes of a motion to dismiss, the Court must "accept as true all factual allegations and draw from them all reasonable inferences." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)). On a motion to dismiss, a district court considers "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

## DISCUSSION

### A. Unconstitutional Conditions of Confinement

The Due Process Clause of the Fourteenth Amendment governs a pretrial detainee's claim of unconstitutional conditions of confinement, while the Cruel and Unusual Punishments Clause under the Eighth Amendment governs a convicted prisoner's claims of unconstitutional

5

conditions of confinement. *See Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996). A pretrial detainee's Fourteenth Amendment due process rights concerning the conditions of his confinement are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *Id.*

In order to establish a § 1983 claim for alleged unconstitutional conditions of confinement, a pretrial detainee must demonstrate that prison officers "acted with deliberate indifference to the challenged conditions." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). This involves satisfying two prongs: 1) "objective prong" and 2) "*mens rea* prong." *Id.*

To prove the objective prong, the detainee "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Id.* at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)). When a detainee alleges multiple conditions of confinement, courts may aggregate the effect of all of them "only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Walker*, 717 F.3d at 124 (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). The conditions "must be measured by its severity and duration, not the resulting injury," but there are no bright line rules regarding severity and duration. *Darnell*, 849 F.3d at 32. The Second Circuit has repeatedly reiterated that the inquiry is fact-intensive. *Id.* at 31.

The *mens rea* prong is defined "objectively." *Id.* at 35. To prove the second prong, the detainee must show that the official "[1] acted intentionally to impose the alleged condition, or [2] recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* Therefore, the detainee does not need

6

to show that any defendant was subjectively aware of the harmfulness associated with the conditions. *Id.*

Initial Detention

Plaintiff describes a number of conditions about his initial three days in the bullpens, in which he was deprived of sleep, nutritionally adequate food and water, and adequate sanitation. Plaintiff alleges that due to overcrowding he was denied "an adequate place to sleep." SAC ¶ 44. Conditions that prevent sleep can give rise to an unconstitutional conditions claim. *Walker*, 717 F.3d at 126. Defendants contend that Plaintiff does not allege the deprivation of sleep but rather deprivation of an "adequate place" to sleep. However, the Court must draw reasonable inferences in favor of Plaintiff as the motion to dismiss standard requires. *Id.* at 128 (reversing dismissal of plaintiff's complaint alleging unconstitutional conditions of confinement in part for failing to draw all reasonable inferences in favor of plaintiff). Here, it is reasonable to infer that Plaintiff, due to overcrowding and the unsanitary conditions of the holding cells, was prevented from sleeping.

Plaintiff also alleges that he was provided unsanitary food and water and not provided with operable sinks and toilets leading to detainees relieving themselves on the floor of the cells. Due Process requires that pretrial detainees are provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the [detainees] who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (per curiam) (quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980)). Due Process also requires that pretrial detainees have "reasonably adequate sanitation and the ability to eliminate and dispose of one's bodily waste without unreasonably risking contamination." *Odom v. Keane*, No. 95 Civ. 9941, 1997 WL 576088, *5 (S.D.N.Y. Sept. 17, 1997) (quoting

*Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994)). Defendants contend that Plaintiff neither specifically alleges that he was deprived of nutritionally adequate food or water nor alleges that he was unable to use the toilets or dispose of bodily waste. Defendant's contention suffers from the same defect as before: reasonable inferences are drawn for the plaintiff. The descriptor "unsanitary" is sufficient to allege a claim of an objective deprivation. *See Willey v. Kirkpatrick*, 801 F.3d 51, 69 (2d Cir. 2015) (upholding plaintiff's nutritionally inadequate food claim based on allegations that plaintiff's food was "moldy" or "rotten."). Moreover, it was reasonable to infer from sinks and toilets being inoperable that Plaintiff could not use them. *See Darnell*, 849 F.3d at 38-39.

However, Plaintiff's pleading fails to meet the *mens rea* prong. He alleges that Defendants intentionally "employed [bullpen therapy] to destabilize detainees' mental states and cause them confusion, discomfort, disorientation, and anxiety." SAC ¶ 46. This allegation, however, is conclusory, and Plaintiff pleads no additional facts to support that assertion. More important, the Complaint does not allege *specific* facts that individual defendants were deliberately indifferent, by alleging, for example, individual defendants' own observations of the "bullpens" or detainees' complaints to officials or officers. *See Cano v. City of N.Y.*, 44 F. Supp. 3d 324, 334 (E.D.N.Y. 2014) (finding that the individual defendants met the *mens rea* prong based on, among other things, their own observations, external reports and complaints, and complaints filed by detainees); *see also Walker*, 717 F.3d at 130 (finding plaintiff's allegations in the complaint that he directly spoke to defendants about conditions and that certain defendants directly witnessed conditions were sufficient to meet the *mens rea* prong). The lack of factual specificity on the issue of Defendants' knowledge is fatal to Plaintiff's claim based on his initial

8

detention. However, if Plaintiff would like to amend the complaint to add the necessary factual specificity, Plaintiff is free to do so.

Denial of Mattress Accommodation

The condition of a detainee's or inmate's mattress "may be so inadequate as to constitute an unconstitutional deprivation." *See Walker*, 717 F.3d at 127; *see also Santiago v. Ponte*, No. 14-CV-6473, 2016 WL 680823, at *2 (S.D.N.Y. Feb 18, 2016) ("[*Walker*] held that the adequacy of a mattress may, alone or in combination with other factors, constitute a condition that satisfies the objective prong of the conditions-of-confinement test if it causes or threatens to cause sufficiently serious harm."). In order to state a unconstitutional conditions of confinement claim based on inadequate bedding, a plaintiff must plead "(1) he had a medical condition requiring a non-standard bed to protect against serious damage to his future health; (2) he made his condition known to the prison officials; (3) he requested a non-standard bed to accommodate the condition; and (4) his request was denied by an official who knew of and disregarded an excessive risk to the plaintiff's health or safety." *See, e.g., Santiago*, 2016 WL 680823, at *2.

Here, Plaintiff alleges that, due to "an injury to the lumbar region of his spine," he suffers from "diagnosed chronic lower-back pain." SAC ¶¶ 33–34, 59–61. His condition was known to the Defendants through his Correctional Health Services medical records. *Id.* ¶¶ 37, 61. He requested "a second mattress or a replacement mattress *because* the single mattress provided to him caused him serious physical pain . . . and exacerbated the pain and discomfort caused by his existing disability," *id.* ¶ 62 (emphasis added), but Defendants denied his repeated requests for the second mattress or replacement mattress, despite knowledge of his condition. These allegations are sufficient to state a claim. *See Harris v. Moore*, No. 15 Civ. 1608, 2015 WL 10427865, at *1-4 (S.D.N.Y. Dec. 3, 2015) (denying motion to dismiss where plaintiff was

9

medically authorized to have a second mattress and explained to defendants that his medical condition required the mattress but defendants nonetheless confiscated his second mattress), *report and recommendation adopted*, 2016 WL 908146 (S.D.N.Y. Mar. 2, 2016).

Dental Care

Plaintiff also brings a claim based on failure to provide timely dental care. Plaintiff alleges that he "requested immediate dental treatment" for his "extreme tooth pain," but that Defendants John Does refused to grant his request for more than five weeks. SAC ¶¶ 68-69. Even after the dentist diagnosed Plaintiff with a tooth infection and referred him to oral surgery, there was another three week delay in surgery that required the tooth be removed. *Id.* ¶¶ 74-78. These allegations are sufficient to state a claim for failure to provide timely dental care. *See Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("A three-week delay in dental care, coupled with knowledge of the inmate-patient's suffering, can support a finding of an Eighth Amendment violation under section 1983").

Confiscation of Medical Brace

To state a claim for deliberate indifference to serious medical needs, a pretrial detainee must plead both an objective and *mens rea* prong. *Davis v. McCready*, 1:14–cv–6405–GHW, 2017 WL 4803918, at *4 (S.D.N.Y. Oct 23, 2017). For the objective prong, "the alleged deprivation of adequate medical care must be sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006) (internal quotation marks omitted). A serious medical need exists where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted). In assessing the seriousness of harm, courts consider (1) "whether a reasonable doctor or patient would find [the alleged deprivation]

10

important and worthy of comment," (2) "whether [it] significantly affects an individual's daily activities," and (3) "whether it causes chronic and substantial pain." *Salahuddin*, 467 F.3d at 280.[1] For the *mens rea* prong, the defendant needs to act with a "sufficiently culpable state of mind." *Davis*, 2017 WL 4803918, at *4. This calls for an inquiry into whether an objectively reasonable person in Defendants' position would have known, or should have known, that Defendants' actions or omissions posed an excessive risk of harm to Plaintiff. *Id.* at *8.

Plaintiff alleges that "due to [his] injuries, pain, and nerve damage" from his stabbing he received a prescription from Correctional Health Services for an arm brace to prevent contractures and worsening of his condition. SAC ¶ 95. The prescription of an arm brace by a physician examining his condition indicates the seriousness of the condition, and moreover, the absence of the brace exacerbated Plaintiff's preexisting disabilities and his chronic pain. *Id.* ¶ 106. Accordingly, the objective prong is met. As for Defendants' mental culpability, Plaintiff alleges that he explained his injury to both officers and even showed them his prescription. *Id.* ¶¶ 101-07. Nonetheless, Defendants, both non-medical professionals, disregarded the prescription and withheld his brace. Indeed, Plaintiff alleges that Officer Griffin's motive was retaliation. These allegations show a culpable state of mind. *See, e.g., Harris*, 2015 WL 10427865, at *4 (finding pre-*Darnell* mens rea prong sufficiently pleaded when defendants confiscated plaintiff's medically prescribed mattress despite plaintiff's substantiation of his need of the mattress by showing his medical referral); *Fredricks v. City of N.Y.*, No. 12 Civ. 3734, 2014 WL 3875181, at *6 (S.D.N.Y. July 23, 2014) (finding pre-*Darnell* mens rea prong sufficiently

---

[1] When the plaintiff is receiving ongoing treatment for a medical condition and alleges that such treatment was interrupted or delayed, then the sufficiently serious inquiry focuses more narrowly on "the particular risk of harm faced by the prisoner" due to the delay or interruption as opposed to just the severity of the underlying medical condition alone. *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003). Because Plaintiff was permanently deprived of his arm brace, treatment was denied for a prolonged period of time, and this case is properly considered a refusal to provide treatment rather than a delayed or interrupted treatment case. *Id.* at 186 n.10.

pleaded when defendants confiscated plaintiff's knee brace despite plaintiff's protestation that it would jeopardize his health and wellbeing).

Cleaning Solvent Injuries and Delay in Medical Treatment

Plaintiff's allegations that Officer Chambers provided him with stain remover and that Defendants delayed medical treatment for the rashes caused by Plaintiff's use of stain remover are insufficient to state an unconstitutional conditions claim. Rashes, in these circumstances, are "generally insufficient to meet the objective requirement of a sufficiently serious condition giving rise to a deliberate indifference claim." *Purdie v. City of N.Y.*, No. 10 Civ. 5802, 2011 WL 1044133, at *3 (S.D.N.Y. Mar. 15, 2011) (listing cases); *see also Troy v. Kuhlmann*, No. 96 Civ. 7190, 1999 WL 825622, at *13 (S.D.N.Y. Oct. 15, 1999) (dismissing deliberate indifference claim related to rashes where rashes were caused by defendants' inability to provide him with gloves and other protective clothing when cleaning pots). Plaintiff, thus, cannot meet the objective prong that the provision of the remover itself was misconduct.[2]

Moreover, Plaintiff's delay in treatment deliberate indifference claim fails. A delay in providing medical care can give rise to a deliberate indifference claim where officials ignore a "life-threatening or fast-degenerating" conditions, *Demata v. New York State Correctional Dep't of Health Services*, 198 F.3d 233, at *2 (2d Cir. 1999) (unpublished) (citing *Liscio v. Warren*, 901 F.2d 274, 277 (2d Cir. 1990)); in other words, the condition must be sufficiently serious. Since the rashes are not a sufficiently serious medical condition, the claim is dismissed.

---

[2] Regarding the *mens rea* prong, Plaintiff alleges that Officer Chambers "knew or should have known" that the stain remover causes rashes. However, the *mens rea* prong requires more than mere negligence. *Darnell*, 849 F.3d at 36. ("A detainee must prove that an official acted intentionally or recklessly, and not merely negligently.").

Municipal Liability

Plaintiff alleges that the City is liable for the alleged constitutional violations discussed above. To plead municipal liability, a plaintiff must allege the existence of a municipal policy or custom that caused a constitutional violation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A plaintiff may meet this "policy or custom" requirement by alleging practices that are "persistent and widespread" as to be "so permanent and well settled as to constitute a custom or usage with the force of law" and to "imply the constructive acquiescence of senior policy making officials." *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870-71 (2d Cir. 1993) (internal quotation marks omitted). Alternatively, a plaintiff can meet this same requirement by alleging that the failure to train or supervise city employees amounts "to deliberate indifference to the rights of those with whom the city employees interact." *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks omitted). Indeed, the persistent failure of senior personnel who have knowledge of a pattern of constitutionally violative acts to take corrective or remedial actions can give rise to an inference of custom or policy. *Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir. 1980); *see also Amnesty America v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) (noting that a plaintiff may demonstrate municipal liability by showing that a "policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions"); *Kucharczyk v. Westchester Cty.*, 95 F. Supp. 3d 529, 544 (S.D.N.Y. 2015) (denying motion to dismiss *Monell* claim where plaintiff alleged widespread practice about which policymaker must have been aware). At the pleading stage, a "plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012).

Plaintiff has alleged (1) a policy of refusing to provide medically necessary mattresses and other reasonable accommodations (SAC ¶ 156); (2) a *de facto* policy "[of] mak[ing] medical treatment available only on certain days" and thus "requir[ing] detainees to wait for medical treatment" for unreasonably long periods of time (*id.* ¶¶ 71–73, 94); and (3) *de facto* policies that permit DOC officers to arbitrarily seize detainees' property (*id.* ¶¶ 121–23). These allegations are sufficient to state a claim as they suggest that events described in the allegations occur with such a degree of regularity that they are the result of policy and custom. In other words, they describe "multiple incidents over a long, continuous time period," which gives rise to an inference of a policy or custom. *See, e.g., Toliver v. City of New York*, No. 10 Civ. 5806, 2012 WL 6849720, at *6 (S.D.N.Y. Sept. 25, 2012) (internal quotation marks omitted); *Ortiz of New York*, 15-CV-5732, 2016 WL 6902477, at *3 ("To plausibly allege a policy or custom, a plaintiff must provide some factual support that is probative of a widespread or repeated occurrence.").

Publicly reported information that the Complaint references corroborates these allegations, including reports that insufficiently supervised corrections officers face no consequences for misconduct and that officers neglected or delayed medical treatment for inmates. *See* SAC ¶¶ 22-23, 29, 121. Contrary to Defendants' contention, Plaintiff may, as courts have allowed, rely on publicly reported information about the experiences of other detainees to corroborate his allegations. Although such reliance on these reports and news articles have little utility on summary judgment, at the motion to dismiss stage, such information suggests that the incidents described in the complaint did not just happen to Plaintiff but also to others. *See Osterhoudt v. City of New York*, No. 10 CV 3173, 2012 WL 4481927, at *1 (E.D.N.Y. Sept. 27, 2012) (upholding *Monell* claims where complaint contained allegations of similar incidents from other lawsuits or settlements). Moreover, this information suggests that

14

Defendant City of New York was aware of these unconstitutional conditions but failed to remedy them and thus supports municipal liability. *See, e.g., Santiago v. Westchester Cty.*, No. 13 Civ. 1886, 2014 WL 2048201, at *6 (S.D.N.Y. May 19, 2014) (denying municipality's motion to dismiss where plaintiff relied on DOJ report to show that municipality was aware of such violations); *Kucharczyk*, 95 F. Supp. 3d at 544-45 (S.D.N.Y. 2015). Accordingly, Plaintiff's *Monell* claim may proceed.

### B. Procedural Due Process

Plaintiff alleges that the deprivation of his prescribed medical brace without due process violated the Fourteenth Amendment. The Supreme Court has held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Defendants argue that New York provides an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action. Relying on *Fredricks v. City of N.Y.*, No. 12 Civ. 3734, 2014 WL 3875181, *7-10 (S.D.N.Y. July 23, 2014), Plaintiff argues that the post-deprivation remedy is inadequate due to the importance of the brace to his well-being and safety and to prevent the further exacerbation of his injuries." The Court disagrees.

In *Fredricks*, the court noted that "a postdeprivation remedy is adequate as long as the plaintiff had access to [1] timely and [2] substantively meaningful review." *Id.* at *8 (quoting *Galdamez v. Taylor*, 329 Fed. App'x 300, 302 (2d Cir. 2009) (summary order)). Whether a post-deprivation remedy satisfies due process depends on how quickly the remedy is available in light of "the particular deprivation involved." *Fredricks*, 2014 WL 3875181, at *9 (internal quotation marks omitted). The *Fredricks* court held that defendants' deprivation of plaintiff's assistive

15

walking devices (his legal braces, prescription orthotic shoes, and cane) and the alleged hardship to the plaintiff—specifically his "ability to ambulate safely wherever he needed to go"—made litigating the tort law claim inadequate in light of the amount of time any litigation takes. *Id.* Essentially, the hardship imposed by deprivation in *Fredricks* was so onerous, given its interference with plaintiff's ability to walk or move, that the post-deprivation procedures were held to be inadequate. However, the deprivation of Plaintiff's medical arm brace, while unfortunate, did not impose a similar level of hardship as that of the plaintiff in *Fredricks* because it did not burden something as fundamental as the ability to walk. Accordingly, Plaintiff has access to a meaningful and timely postdeprivation remedy here, *see Davis v. New York*, 311 Fed. App'x 397, 400 (2d Cir. 2009), and his procedural due process claim is dismissed.

### C. ADA

Plaintiff alleges that the DOC in violation of Title II of the ADA failed to make reasonable accommodations for his physical and mental disabilities by housing him in "unsanitary" and "overcrowded" bullpens for three days, placing him in a cell instead of a dormitory for two months, and refusing to provide him with an extra or proper mattress. To state a claim under Title II of the ADA, a plaintiff must allege "that (1) he or she is a qualified individual with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiff was denied the opportunity to participate in or benefit from defendants' services, programs, or activities or was otherwise discriminated against by defendants, by reason of plaintiff's disabilities." *Shomo v. City of New York*, 579 F.3d 176, 185 (2d Cir. 2009) (internal quotation marks omitted). Defendants argue that the third element is not met because Plaintiff does not allege that he was denied the opportunity to participate in any services, programs, or activities because of his disabilities. However, Plaintiff has alleged that the failure to provide reasonable

16

accommodations deprived him of the *benefit* of the facility's living quarters, bedding, and medical care without suffering additional pain. *See Allah v. Goord*, 405 F. Supp. 2d 265, 280–81 (S.D.N.Y. 2005). Accordingly, these allegations are sufficient to state an ADA claim.

### D. Negligence

Plaintiff brings a New York state law claim for premises liability, specifically that the City failed to repair a dangerous crack that it was or should have been aware of and that Plaintiff tripped over the crack.[3] Defendants contend that such allegations fail to state a claim because the allegations lack specific details regarding the incident. However, Plaintiff does not need to plead his case with particularity but provide enough facts to support a plausible inference that the City was negligent. *See Burgos v. Satiety, Inc.*, No. 10–CV–2680, 2011 WL 1327684, at *4 (E.D.N.Y. Apr. 5, 2011). Plaintiff does so here. *See Harris v. IG Greenpoint Corp.*, 72 A.D.3d 608, 609, 900 N.Y.S.2d 44, 45 (1st Dep't 2010).

Alternatively, Defendants request that the Court decline to exercise jurisdiction over Plaintiff's negligence claim because none of Plaintiff's other federal claims are related to the trip and fall. Because Plaintiff's other federal claims are plausibly alleged, exercising supplemental jurisdiction over the negligence claim as they relate to Defendants is proper. In order for a federal court to exercise supplemental jurisdiction, "the federal claim and state claim must stem from the same common nucleus of operative fact; in other words, they must be such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding." *See Montefiore Medical Center v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011) (internal quotation

---

[3] Plaintiff's allegations regarding his trip and fall do not state a violation of any constitutional right. Any injury to an inmate or detainee resulting from a negligent act of any official—here, a trip and fall—does not violate the Constitution. *See Muhammad v. Francis*, No. 94-CV-2244, 1996 WL 657922, at *8 (S.D.N.Y. Nov. 13, 1996); *see also Flowers v. City of N.Y.*, 668 F. Supp. 2d 574, 578 (S.D.N.Y. 2009) ("Any claim against the City for the slip and fall that resulted in plaintiff's [...] injury—a garden variety tort—is not cognizable under Section 1983[.]").

marks omitted). Defendants thus construe the court's supplemental jurisdiction too narrowly. The inquiry turns not on whether the claims are related but rather if they arise from a "common nucleus of operative fact," specifically whether "the facts underlying the federal and state claims substantially overlapped ... [or] the federal claim necessarily brought the facts underlying the state claim before the court." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (citation and internal quotation marks omitted). Although the Court dismissed federal claims as to the trip and fall (*see* fn. 2, *supra*), the other federal claims against the City (and certain individuals) survive. Indeed, the negligence claim arises from the same set of facts as the federal claims as both involve Plaintiff's time at the Rikers facility. *See Case v. Anderson*, No. 16 Civ. 983, 2017 WL 3701863, at *7 n.7 & *20 (S.D.N.Y. Aug. 25, 2017). The Court, thus, in its discretion will exercise supplemental jurisdiction over the negligence claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. The procedural due process claim is dismissed, and all other claims survive. Plaintiff is granted to leave to amend his claim regarding his initial detention.

**SO ORDERED.**

**Dated: March 9, 2018**
**New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**